## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALONZO JASON**                                              **CIVIL ACTION**

**versus**                                                        **NO. 04-0882**

**BURL CAIN, WARDEN**                                        **SECTION: "S" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Alonzo Jason, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 16, 1998, he was convicted of attempted purse snatching in violation of La.Rev.Stat.Ann. § 14:(27)65.1 and possession of cocaine in violation of La.Rev.Stat.Ann. § 40:967.[2]  On March 19, 1999, he was found to be a third offender and was sentenced as such on the attempted purse snatching conviction to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence.  He was also sentenced on the conviction for possession of cocaine to a concurrent term of five years imprisonment.[3]  On December 6, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences.[4]  He then filed with the Louisiana Supreme Court an application for supervisory writs[5] which was denied on November 9, 2001.[6]

On or about May 8, 2002, petitioner filed with the state district court an application for post-conviction relief [7] which was denied on May 29, 2002.[8]  He next filed with the Louisiana

---

[2] State Rec., Vol. I of V, minute entry dated July 16, 1998; State Rec., Vol. II of V, jury verdict forms.

[3] State Rec., Vol. I of V, transcript of March 19, 1999, pp. 10-11; State Rec., Vol. I of V, minute entry dated March 19, 1999.

[4] State v. Jason, 779 So.2d 865 (La. App. 4th Cir. 2000) (No. 99-KA-2551); State Rec., Vol. I of V.

[5] State Rec., Vol. V of V.

[6] State v. Jason, 801 So.2d 357 (La. 2001) (No. 2001-K-0037); State Rec., Vol. III of V.

[7] State Rec., Vol. I of V.  The application was signed by petitioner on May 8, 2002.

[8] State Rec., Vol. I of V, Judgment dated May 29, 2002.

Fourth Circuit Court of Appeal an application for a writ of review[9] which was denied on the merits on August 2, 2002.[10]  He then filed with the Louisiana Supreme Court applications for writs of review[11] which were denied on October 3, 2003.[12]

On February 26, 2004, petitioner filed this federal application for *habeas corpus* relief.[13]  In support of his application, he raises the following claims:

1.   Petitioner was wrongly found to be a habitual offender;

2.   Petitioner's sentence is excessive and the trial court erred in denying the motion to reconsider that sentence;

3.   Petitioner's rights were violated when he was not allowed to change his plea;

4.   The prosecutor's rebuttal argument was improper and prejudicial;

5.   The trial court erred when it failed to include "theft" as a responsive verdict and to include a jury instruction on theft; and

---

[9] State Rec., Vol. IV of V.

[10]  State v. Jason, No. 2002-K-1289 (La. App. 4th Cir. Aug. 2, 2002) (unpublished); State Rec., Vol. IV of V.

[11]  State Rec., Vol. V of V.

[12]  State ex rel. Jason v. State, 855 So.2d 297 (La. 2003) (No. 2002-KH-2414); State ex rel. Jason v. State, 855 So.2d 298 (La. 2003) (No. 2002-KH-2433); State Rec., Vol. V of V.

[13]  Rec. Doc. 1.

6.      Petitioner received ineffective assistance of counsel.[14]

The state filed a memorandum in opposition to petitioner's application, arguing that the application was untimely.[15]  Petitioner filed a response challenging the state's argument.[16]  The state was then ordered to file a supplemental memorandum addressing the merits of petitioner's claims and any other defenses the state wished to raise.[17]  The state then filed a supplemental response arguing that petitioner's claims should be denied on the merits.[18]

Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence becomes "final."  Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).[19]

As noted, on November 9, 2001, the Louisiana Supreme Court denied petitioner's writ application challenging the state intermediate appellate court's judgment affirming his convictions.  For AEDPA purposes, his convictions became "final" ninety (90) days later, when his

---

[14]  In his application, petitioner listed fifteen claims.  However, because those claims as stated were often repetitive and overlapping, the Court has consolidated and reordered the claims for ease of analysis.  However, the substance of the claims has not been changed.

[15]  Rec. Doc. 6.

[16]  Rec. Doc. 7.

[17]  Rec. Doc. 8.

[18]  Rec. Doc. 13.

[19]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

period expired for seeking a writ of certiorari from the United States Supreme Court.  See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1).  Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief commenced on February 7, 2002, and expired one year later, on February 7, 2003, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).  Eighty-nine (89) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of his post-conviction application on May 8, 2002.  Although that application was denied, tolling continues uninterrupted during the period of appellate review, so long as petitioner sought such review in a timely manner.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).  It appears from the record that petitioner's related writ applications were timely filed.[20]  Accordingly, the Court finds that tolling continued until the Louisiana Supreme Court denied writs on October 3, 2003.

---

[20]   The United States Fifth Circuit Court of Appeals recently held that federal courts must apply the "mailbox rule" to Louisiana state court filings.  Causey v. Cain, No. 04-30618, 2006 WL 1413490 (5th Cir. May 24, 2006).  In light of Causey, the fact that both petitioner's intermediate appellate court application and his Louisiana Supreme Court application were signed within the applicable thirty-day periods for seeking review, and the fact that the record does not conclusively show that the filings were untimely, this Court, out of an abundance of caution, will assume for the purposes of this decision that the filings were in fact timely.

At that point, petitioner had two hundred seventy-six (276) days of his one-year statute of limitations remaining.  In that his federal application was filed one-hundred forty-six (146) days later on February 26, 2004,[21] it was timely.

Because petitioner's federal application was timely filed and because the state does not contend that he failed to exhaust his state court remedies, the Court will address petitioner's claims.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the

---

[21]  Petitioner signed his application for federal *habeas corpus* relief on February 26, 2004.  Rec. Doc. 1.  That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

> writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> On April 11, 1999, at approximately 12:50 a.m., Roberta Szalach, a nurse, and her husband, Calvin, a nuclear medicine technician, in town for a nuclear medicine convention, were returning to the Marriott Hotel after having dinner and visiting the French Quarter. As they walked on Canal Street from Bourbon Street toward the river, the Szalachs observed a man lying on the sidewalk. Ms. Szalach testified that she believed the man to be injured, and wanted to stop to help him. Her husband suggested they go to their hotel and call for help, but Ms. Szalach leaned over to observe the man more closely. As she did, a man struck her on the side of her head, knocking her to the ground. He then pulled her purse from her shoulder, breaking the strap. Ms. Szalach got up and approached the man, who was attempting to open her purse. She yelled at him to return her purse, at which time he struck her in the head and knocked

- 7 -

her to the ground again, falling on top of her.  Ms. Szalach testified that some men pulled the man off of her just as the police arrived.

Mr. Szalach testified that he had begun to walk away from the injured man, and was about five feet from his wife, when he heard her scream.  As he turned back, he saw his wife approach Mr. Jason and attempt to get her purse from him.  Mr. Jason struck her in the head.  He was moving toward Mr. Jason just as several men came out of the nearby McDonald's restaurant and the police arrived.

Edmond Smith, the owner of the McDonald's restaurant testified that he was standing outside of his restaurant with a security guard employed by him, when he noticed a fight going on down Canal Street.  He then saw Mr. Jason begin to walk toward him and snatch Ms. Szalach's purse.  Mr. Smith described Mr. Jason as being "hyper."  After Mr. Jason had fallen on top of Ms. Szalach, Mr. Smith helped to pull him off and flag down a passing police car.  He stated that the police at first believed the incident was a fist fight, but after he explained what had happened, they arrested Mr. Jason.  They handcuffed Mr. Jason, frisked him, and discovered cocaine in his pocket.

New Orleans Police Officer Patrick Evans testified that he and his partner, Troy Williams, were on routine patrol on Canal Street when they noticed a disturbance on the sidewalk.  They exited their vehicle, and, after listening to Mr. Smith's account of what had transpired, they arrested Mr. Jason.  Upon searching him incidental to the arrest, Officer Evans discovered three pieces of crack cocaine in a coin purse in Mr. Jason's pocket.

On cross-examination, Mr. Jason's counsel questioned Officer Evans about an additional charge of second degree battery brought against Mr. Jason that evening.  Officer Evans admitted that he and his partner were also advised of the incident down the street, and that he was told Mr. Jason had beaten a man down the street who attempted to hand him his hat he had dropped.  The man was knocked to the ground and fractured his skull.

It was stipulated that the objects seized from Mr. Jason's pocket tested positive for cocaine.[22]

---

[22]  State v. Jason, 779 So.2d 865, 868-69 (La. App. 4th Cir. 2000) (No. 99-KA-2551); State Rec., Vol. I of V.

- 8 -

<u>Habitual Offender Adjudication</u>

The multiple bill of information charged that petitioner was a third offender, having previously been convicted in case number 377-248 of first degree robbery and in case number 333-894 of possession of cocaine.  Petitioner now raises a gallimaufry of claims relating to his habitual offender adjudication.

Two of those claims, i.e. (1) that the state failed to prove that petitioner was advised of his <u>Boykin</u> rights and knowingly and voluntarily entered guilty pleas with respect to the predicate convictions and (2) that the multiple bill of information misstated his most recent conviction and the date of his first conviction, were addressed on direct appeal by the Louisiana Fourth Circuit Court of Appeal in connection with a related ineffective assistance of counsel claim.  That court held:

> In <u>State v. Shelton</u>, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court reviewed the jurisprudence concerning the burden of proof in habitual offender proceedings, and found it proper to assign the burden of proof to a defendant who contests the validity of his guilty plea.  In <u>State v. Winfrey</u>, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 80, <u>writ denied</u> 98-0264 (La. 6/19/98), 719 So.2d 481, the Fifth Circuit Court of Appeal summarized the procedure for determining the burden of proof in a multiple offender hearing:
>
>> If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that the defendant was represented by counsel when the plea was taken.  Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea.  Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea.  In doing so, the State must produce either a "perfect" transcript of the <u>Boykin</u> colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2)

- 9 -

a minute entry, or (3) and "imperfect" transcript.  If anything less than an "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.

Prior to State v. Shelton, *supra*, the requirement of proof of Boykinization was a transcript of the plea of guilty or a minute entry showing an articulated waiver of the three rights.  In State v. Bland, 419 So.2d 1227, 1232 (La. 1982), the minute entry alone was sufficient to show that the defendant was informed of his rights where the minute entry itemized those rights.

When a defendant argues that the Boykinization documentation is inadequate, the trial court must weigh the evidence and determine if the State met its burden of proving that the defendant's prior plea was informed and voluntary.  Here, the trial court examined the evidence admitted by the State for one of Mr. Jason's predicate felonies including a pre-printed minute entry stating that Mr. Jason was advised of his Boykin rights; the docket master establishing that on that date, May 18, 1989, Mr. Jason was represented by counsel; and the guilty plea form was signed by defense counsel.  We find no error in the trial court's determination that Mr. Jason's 1989 plea was informed and voluntary.

Through private counsel, Mr. Jason argues that his 1995 conviction for simple robbery should not have been used to enhance his sentence because of several defects.  In support of that conviction, the State introduced the bill of information, the guilty plea, the docket master, the minute entries of the plea and the sentencing, and the arrest register.  Mr. Jason argues that the copy of the guilty plea in the record does not contain the judge's signature.  The docket master and the minute entry, however, establish that the plea was taken in open court when the judge would necessarily have been present.  The form states, "The judge has addressed me personally ...."  The State sufficiently proved that the plea was valid.  See State v. Shelton, *supra*; State v. Winfrey, *supra*.

Mr. Jason also argues that the bill of information was incorrect because it accused him of being guilty as charged in the instant case when he was, in fact, found guilty of the lesser included offense of attempted purse snatching.  It is obvious from the record that the trial judge knew Mr. Jason had been found guilty of the lesser included offense in the trial over which he has just presided, and the conviction for which he was about to render sentence.  Furthermore,

- 10 -

> for billing purposes, there is no difference between purse snatching
> and attempted purse snatching, both being felonies and crimes of
> violence.  La.Rev.Stat. 14:13.
>
> Mr. Jason also complains of a typographical error in the
> multiple bill which listed the date of the cocaine conviction as May
> 19, 1985, rather than May 19, 1989.  We find that the State
> adequately proved that Mr. Jason pled guilty to possession of cocaine
> on May 18, 1989.  There is no indication that Mr. Jason was
> somehow prejudiced by the typographical error as might have been
> the case if he had not known which prior plea was being used in the
> multiple bill.  The multiple bill was clearly marked with the correct
> case number and section of court.[23]

Accordingly, state law sets forth the burdens of proof in Louisiana habitual offender proceedings.

Applying that law, the state court found that the prosecution met its burden of proof to establish that

petitioner was in fact a third offender.  A federal *habeas* court is not to revisit such state law

determinations.  "'[I]t is not the province of a federal *habeas* court to reexamine state-court

determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999)

(quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  In any event, petitioner has failed to

establish that the state court erred in rejecting his claim.[24]

In his state post-conviction proceedings, petitioner also raised several additional

claims challenging his habitual offender adjudication.  The state courts ruled that those claims

---

[23]  State v. Jason, 779 So.2d at 872-73; State Rec., Vol. I of V.

[24]  Moreover, if petitioner's claim were interpreted broadly as a direct challenge to the validity
of the predicate convictions, that claim would be barred by Lackawanna County District Attorney
v. Cross, 532 U.S. 394 (2001).  See *infra* note 27 and accompanying text.

likewise had no merit.[25]  For the following reasons, this Court reaches the same conclusion regarding

the claims, which petitioner has now reurged in his federal application.

Petitioner argues that his 1989 predicate conviction was invalid because he was not

placed under oath prior to pleading guilty.  That claim fails for several reasons.  First, petitioner did

not file a written response challenging the predicate convictions or even object to the use of the

convictions on that basis at the habitual offender hearing.   Accordingly, pursuant to §

15:529.1(D)(1)(b), the prior judgment of conviction was entitled to the presumption of regularity

and was sufficient to meet the state's burden of proof.[26]  Second, petitioner has presented no

---

[25]  The state district court ruled that the claims were "without merit."  State Rec., Vol. I of V,
Judgment dated May 29, 2002.  The Louisiana Fourth Circuit found "no error in the trial court's
judgment."  State v. Jason, No. 2002-K-1289 (La. App. 4th Cir. Aug. 2, 2002) (unpublished); State
Rec., Vol. IV of V.  The Louisiana Supreme Court then denied the related writ applications without
assigning reasons.  State ex rel. Jason v. State, 855 So.2d 297 (La. 2003) (No. 2002-KH-2414); State
ex rel. Jason v. State, 855 So.2d 298 (La. 2003) (No. 2002-KH-2433); State Rec., Vol. V of V.

[26]  La.Rev.Stat.Ann. § 15:529.1(D)(1)(b) provides:

Except as otherwise provided in this Subsection, the district
attorney shall have the burden of proof beyond a reasonable doubt on
any issue of fact.  The presumption of regularity of judgment shall be
sufficient to meet the original burden of proof.  If the person claims
that any conviction or adjudication of delinquency alleged is invalid,
he shall file a written response to the information.  A copy of the
response shall be served upon the prosecutor.  A person claiming that
a conviction or adjudication of delinquency alleged in the
information was obtained in violation of the Constitutions of
Louisiana and of the United States shall set forth his claim, and the
factual basis therefor, with particularity in response to the
information.  The person shall have the burden of proof, by a
preponderance of the evidence, on any issue of fact raised by the
response.  Any challenge to a previous conviction or adjudication of
delinquency which is not made before sentence is imposed may not
thereafter be raised to attack the sentence.

evidence in support of his bald assertion that he was not placed under oath in the prior proceedings.

Third, he has not established that Louisiana law requires that the plea be taken under oath.  Article

556.1 of the Louisiana Code of Criminal Procedure, which governs the taking of pleas, mentions no

such requirement.  Fourth, even if such an oath is normally required, that defect is waived if it was

not raised by a timely objection in the prior proceedings.  State v. Henry, 788 So.2d 535, 544 (La.

App. 1st Cir. 2001).  Petitioner does not allege, must less establish, that he made such an objection.

Fifth, petitioner's claim is barred by Lackawanna County District Attorney v. Cross, 532 U.S. 394

(2001).  In Lackawanna, the United States Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or
> collateral attack in its own right because the defendant failed to
> pursue those remedies while they were available (or because the
> defendant did so unsuccessfully), the conviction may be regarded as
> conclusively valid.  If that conviction is later used to enhance a
> criminal sentence, the defendant generally may not challenge the
> enhanced sentence through a petition under § 2254 on the ground that
> the prior conviction was unconstitutionally obtained.

Id. at 403-04 (citation omitted).[27]

Petitioner next claims that Officer Glen Burmaster, the fingerprint expert who

testified for the state at the habitual offender proceeding, "has a record of making erroneous

fingerprint analysis determinations" and, therefore, the "presumption of regularity" should not attach

to his testimony.  Petitioner's claim fails for at least two reasons.  First, the parties stipulated that

---

[27]   The Supreme Court noted that the Lackawanna prohibition would not apply where it is argued that the predicate conviction was unconstitutional because it was obtained where there was a failure to appoint counsel in violation of Gideon v. Wainwright, 372 U.S. 335 (1963).  Lackawanna, 532 U.S. at 404.  That limited exception is inapplicable in this case.  The evidence presented at the multiple offender hearing showed that plaintiff was represented by attorney L. Howard McCurdy in the 1989 case.  State Rec., Vol. II of V.

Officer Burmaster was an expert in the identification of fingerprints.[28]  The fact that he may have in the past been wrong on occasion does not mean that he was not a qualified expert or that he was wrong in the instant case.  Second, and more fundamentally, petitioner does not dispute that the predicate convictions in fact relate to him.  Rather, he argues only that the convictions were defective in various other respects.  Because petitioner does not dispute the issue of identity, much less produce evidence demonstrating that Burmaster erred in this case, petitioner clearly is not entitled to relief based on this claim.

Petitioner claims that he was not advised of his right to remain silent at the habitual offender arraignment and hearing.  It is true that the Louisiana courts have found that La.Rev.Stat.Ann. § 15:529.1 "implicitly" requires that the defendant be advised of his right to remain silent in habitual offender proceedings.  See, e.g., State v. Johnson, 432 So.2d 815 (La. 1983).  Nevertheless, petitioner's claim fails for at least two reasons.  First, petitioner has not proven that he was not advised of his right to remain silent.  Second, even if he were not so advised, the failure of the trial court to advise the defendant of his right to remain silent is harmless error where he in fact exercised his right to remain silent and his habitual offender status was established by competent evidence offered by the prosecution at a hearing, rather than by his own admissions.  See, e.g., State v. Beverly, 867 So.2d 107, 109 (La. App. 3rd Cir. 2004); State v. Perkins, 762 So.2d 67, 75 (La. App. 5th Cir. 2000); State v. Perkins, 751 So.2d 403, 408-09 (La. App. 5th Cir. 2000).  In the instant case, petitioner's habitual offender status was established by the state's evidence, not by any admission made by petitioner.  Accordingly, even if he were not advised of his right to remain silent,

---

[28]  State Rec., Vol. III of V, transcript of January 19, 1999, pp. 2-3.

he did in fact remain silent; therefore, any failure with respect to the advisement is of no moment.

State v. McDonald, 562 So.2d 25, 26 (La. App. 5th Cir. 1990).

Lastly, petitioner claims that the state court's application of the habitual offender law as it existed at the time of his most recent offense rather than as it existed at the time of his prior offenses constituted a prohibited *ex post facto* application of the law.  Courts have exhaustively analyzed and rejected that argument because "[f]or the purposes of analyzing *ex post facto* implications of repeat offender statutes, the relevant offense is the current or latest crime, not the predicate offenses."  Neal v. Kaylo, No. 01-2211, 2001 WL 1195879, at *6-8 (E.D. La. Oct. 10, 2001).  For the reasons set forth at length in Neal, this Court likewise rejects the argument.

Excessive Sentence

Petitioner claims that his sentence is excessive.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> Both appellate project counsel and private counsel assign as error the excessiveness of Mr. Jason's sentence of life imprisonment as a third felony offender.  Appellate project counsel concedes that the sentence is mandatory pursuant to La.Rev.Stat. 15:529.1(A)(2)(b)(ii), but argues that the sentence is unconstitutionally excessive in this case.  Private counsel argues that State v. Dorthey, 623 So.2d 1276 (La. 1993) mandates that the trial court examine the particular facts of the case to determine if a statutorily-mandated sentence is constitutionally excessive.
>
> Louisiana Revised Statute 15:529.1(A)(2)(b)(ii) provides:
>
> > If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the

remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

The two predicate crimes on which the multiple bill was based were simple robbery and possession of cocaine. Mr. Jason was multiple billed on the attempted purse snatching conviction. Both simple robbery and attempted purse snatching are crimes of violence.

Mr. Jason maintains that under State v. Dorthey, 623 So.2d 1276 (La. 1993), the mandatory life sentence should be deemed excessive considering the circumstances of this offense. Particularly, he argues that in connection with the predicate offense of simple robbery he received only fifteen months, but for an attempted purse snatching he received a life sentence.

He asserts that his case is analogous to State v. Barthlomew, 377 So.2d 1233 (La. 1979), wherein a life sentence was set aside because the trial judge did not consider all of the sentencing "alternatives." We not [sic] find Barthlomew applicable to this case. First, Barthlomew did not involve a multiple offender adjudication. Second, Mr. Bartholomew's sentence was set aside because the trial judge imposed a prohibition against probation or suspension of sentence, penalties not contained in the statute at the time the crime was committed. Therefore, the sentence exceeded the statutory limits and disregarded available sentencing alternatives.

The Louisiana Supreme Court has held that the penalties provided by La.Rev.Stat. 15:529.1 are not unconstitutional on their face and do not provide grounds for quashing a multiple bill. State v. Pollard, 93-0660 (La. 10/20/94), 644 So.2d 370. A trial court does have the authority to reduce the mandatory minimum sentence provided by the statute for a particular offense and offender when such a term would violate the defendant's constitutional protection against excessive punishment. Id. However, as our Supreme Court explained in State v. Walter Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672,"it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders." Rather, the sentencing court can only "determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution." Walter Johnson, 97-1906 at p. 8, 709 So.2d at 677. A defendant must prove by clear and convincing evidence that he "is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the

- 16 -

circumstances of the case." <u>Walter Johnson</u>, *supra*, citing J. Plotkin's concurrence in <u>State v. Young</u>, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531, <u>writ denied</u> 95-3010 (La. 3/22/96), 669 So.2d 1223.

In this case, we find no error in the trial court imposing the mandatory life sentence and in not particularizing the sentence to Mr. Jason. The trial court had little discretion in sentencing given the fact that Mr. Jason had three offenses, two of which were crimes of violence. Furthermore, there was no evidence offered to distinguish Mr. Jason as exceptional, thereby rebutting the presumption that the mandatory minimum sentence was constitutional. <u>State v. Walter Johnson</u>, *supra*; <u>State v. Finch</u>, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, <u>writs denied</u> 99-1240 (La. 10/8/99), 750 So.2d 179 and 99-1300 (La. 10/8/99), 750 So.2d 963; <u>State v. Francis</u>, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, <u>writ denied</u> 98-2360 (La. 2/5/99), 737 So.2d 741.

Additionally, Mr. Jason's comparison between the sentence for simple robbery and the one for attempted purse snatching is not germane to the issue. Mr. Jason is being sentenced as a **multiple offender**; therefore, the sentence in this case is to punish him for being a repeat offender. He is not receiving a life sentence for an attempted purse snatching conviction.[29]

To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. <u>Narvaiz v. Johnson</u>, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Further, to the extent that petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit. In <u>Solem v.</u>

---

[29] <u>State v. Jason</u>, 779 So.2d at 869-70 (footnote omitted) (emphasis in original); State Rec., Vol. I of V.

<u>Helm</u>, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." <u>United States v. Gonzales</u>, 121 F.3d 928, 942 (5th Cir. 1997) (citing <u>Rummel v. Estelle</u>, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." <u>Gonzales</u>, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." <u>Id</u>. (quotation marks omitted).

Interpreting <u>Solem</u> in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

<u>McGruder v. Puckett</u>, 954 F.2d 313, 316 (5th Cir. 1992).  Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." <u>Id</u>

The Fifth Circuit has noted that <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." <u>Gonzales</u>, 121 F.3d at 943. In <u>Rummel</u>, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in <u>Rummel</u> falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

<u>Gonzales</u>, 121 F.3d at 943 (footnote omitted).

In this case, petitioner's predicate convictions were for simple robbery, which is a dangerous and violent crime, and possession of cocaine, which is a serious crime that, because it furthers illegal drug trafficking, results in high societal costs. Moreover, petitioner's present habitual offender sentence is imposed with respect to a conviction for attempted purse snatching, yet another violent crime. In light of those facts, and considering the <u>Rummel</u> finding that a life sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, this Court has no hesitation in concluding that petitioner's life sentence as a third offender under these circumstances, which are considerably more grave, was not grossly disproportionate. In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." <u>Gonzales</u>, 121 F.3d at 942. Because

- 19 -

petitioner's sentence is not so excessive as to violate the United States Constitution, this claim must fail.

In a related claim, petitioner argues that the trial court erred in denying petitioner's motion to reconsider sentence. On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, concisely holding: "Mr. Jason assigns as error the trial court's denial of his motion to reconsider sentence. He argued in this motion that the sentence was excessive. This issue was discussed above."[30] This claims likewise merits no further consideration in this proceeding. The state courts determined that the sentence was not excessive under state law and this Court has determined that it was not excessive under federal law. Accordingly, the trial court did not err in denying the motion to reconsider the sentence.

Plea

Petitioner claims that his rights were violated when he was not allowed to change his plea. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim, holding:

> In the last assignment of error raised by private counsel, Mr. Jason argues that his request to change his plea from guilty [sic] to not guilty and not guilty by reason of insanity should have been granted.
> Mr. Jason originally pled not guilty on August 25, 1997. Trial was continued numerous times until it was finally set for July 16, 1998. On the morning of trial, defense counsel filed a motion for a lunacy commission that the court granted. Counsel also filed a motion for continuance and a motion to change the plea to not guilty and not guilty by reason of insanity. A lunacy hearing was held immediately. Two subpoena *duces tecum* were submitted by the defense: one to the University Medical Center of Louisiana, where

---

[30] State v. Jason, 779 So.2d at 871-72; State Rec., Vol. I of V.

Mr. Jason evidently had been hospitalized for two days of psychiatric treatment the week before trial, and the other to Chartres Mental Health Clinic for a report of March 22, 1996, a time when Mr. Jason alleged he was experiencing auditory and visual hallucinations.

Dr. Salcedo, a forensic psychologist, testified that he examined Mr. Jason on the morning of trial and read the 1996 report. Dr. Salcedo specifically stated, "I did not see any information available to me or in his clinical presentation today, and based on my diagnosis of him today, that there would be any disease or defect, any mental disease or defect which would have compromised his ability to distinguish right from wrong at the time of the alleged offense." He also found Mr. Jason competent to stand trial. Dr. Salcedo described Mr. Jason as a malingerer.

Dr. Richoux, a forensic psychiatrist, also examined the 1996 report and was present at the interview with Mr. Jason on the morning of trial. He stated "it was more likely than not that the defendant was sane at the time of the offense."

The court then denied the motion to change the plea.

Louisiana Code of Criminal Procedure art. 561 provides that a defendant is allowed 10 days after arraignment to change his plea from not guilty to not guilty and not guilty by reason of insanity. After the 10 day period, the court may allow a change of plea, for good cause shown, at any time prior to commencement of trial. The revision comments indicate that the rule was adopted to preclude a motion to change plea being filed as a dilatory tactic.

A plea of not guilty by reason of insanity urges that the defendant was incapable of distinguishing between right and wrong at the time the criminal offense was committed. La.Rev.Stat. 14:14; La.Code Crim. Proc. art. 650. A defendant's state of mind after arrest is not germane to a plea to an indictment or bill of information, but, rather, relates solely to his capacity to assist his counsel and to proceed, with understanding, through the judicial process. See La.Code Crim. Proc. art. 641, *et seq*.

A defendant's burden of showing good cause to grant a motion to change plea logically increases each day that his trial date nears. State v. Mercer, 564 So.2d 783, 785 (La.App. 2 Cir. 1990). In Mercer, the defendant pleaded not guilty on September 14, 1988. After a preliminary hearing was held, 40 days prior to the trial date, defendant orally moved to change his plea. After hearing, the trial court denied the motion, stating that "after considering the medical records and the lay testimony ... [and] defendant's demeanor ..., that defendant failed to establish good cause [for a] ... change of plea...." Although the defendant appeared to the trial court to be "slow," the

trial court did not find him to be suffering from any incapacities "so as to render him incapable of distinguishing right from wrong." The Second Circuit reversed, finding an abuse of discretion. Medical reports in the record indicated "borderline" mental retardation that limited the defendant's ability to "determine right from wrong," and an affidavit submitted by the defendant's mother stated that he was "presently undergoing psychiatric treatment." The Court found that the defendant showed good cause to warrant a change of plea.

In this case, Mr. Jason waited 11 months, until the morning of trial, to file the motion to change his plea. He presented no evidence that he did not understand the difference between right and wrong at the time he committed the offense. Both experts testified that Mr. Jason was sane at the time of the offense. Accordingly, the trial court did not err in refusing to allow Mr. Jason to change his plea.[31]

Again, to the extent that petitioner is arguing that the state courts misapplied state law, this court does not review state court determinations regarding issues of state law. Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Petitioner identifies no *federal* right that he believes is implicated by his claim, and this Court finds no federal constitutional violation.

Accordingly, petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects the claim.

Rebuttal Argument

Petitioner next claims that the prosecutor's rebuttal argument was improper and prejudicial. Specifically, petitioner points to the following portion of that argument:

---

[31] State v. Jason, 779 So.2d at 873-74; State Rec., Vol. I of V.

MS. BEAL [the prosecutor]:
     ... I guess the suggestion is that the Police Department planted the evidence.  First that Mr. and Mrs. Szalach lied, that this didn't happen.  That he didn't punch her twice, and that Mr. Smith came in here and he lied.  That he didn't see the Defendant punch her and that he didn't see the officer retrieve three rocks of crack cocaine from the Defendant.   Suggestion is that everybody is coming into this courtroom and everybody is lying and planting evidence.  Well, that's his job.  The Defense has to say that.

BY MR. WAINWRIGHT [defense counsel]:
     I'm going to lodge an objection to that, Your Honor, it's not my job to say that everyone here is lying.  In fact, I never said that.

BY THE COURT:
     The record will speak for itself.  This is argument, overruled.[32]

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim, holding:

     Mr. Jason argues that the State made an improper statement during rebuttal to Mr. Jason's closing argument.  Specifically, he complains that the district attorney said that it was defense counsel's job to show that the State's witnesses were lying, a statement objected to by defense counsel, but overruled.

     Louisiana Code of Criminal Procedure art. 774 states that the State's rebuttal shall be confined to answering the argument of the defense.  The prosecutor's statement that it was defense counsel's job to attack the credibility of the State's witnesses was made to rebut the defense's argument that the jury should not believe the State's witnesses.   The jury's function is to assess the credibility of the witnesses, and it is proper for both sides to argue that their witnesses should be believed and the other side's not believed.   We find nothing improper in the prosecutor's argument.[33]

---

[32]  State Rec., Vol. III of V, transcript of objections during the state's closing argument on July 16, 1998, pp. 3-4.

[33]  State v. Jason, 779 So.2d at 870; State Rec., Vol. I of V.

- 23 -

To the extent that petitioner is arguing that the prosecutor's remarks were improper under state law, his claim is not cognizable.  The state court determined that the remarks were proper under state law, and "'it is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

To the extent that petitioner is arguing that the prosecutor's comments were so egregious as to violate federal law, his claim has no merit.  The United States Fifth Circuit Court of Appeals has held:

> Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.  Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote omitted); see also Jones v. Butler, 864 F.2d 348 (5th Cir. 1989).  In other words, a prosecutor's remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon which the jury based its verdict." Harris, 313 F.3d at 245.

In the instant case, this Court agrees with the state court that petitioner cannot even show that the comments were in fact improper.  Nevertheless, even if the comments were found to be improper, petitioner still would not be entitled to relief pursuant to the applicable standard.  The prosecutor's comments were neither persistent nor pronounced.  Moreover, in light of the overwhelming evidence of petitioner's guilt, including the compelling and credible eyewitness

testimony, the remarks clearly were not a "crucial, critical, highly significant factor" in the jury's

verdict.  The comments did not render petitioner's trial fundamentally unfair.

<u>Failure to Include Responsive Verdict/Jury Instructions</u>

Petitioner next claims that the trial court erred when it failed to include "theft" as a

responsive verdict and to instruct the jury on the statutory definition of theft.  The state district court

found no merit to that claim.[34]

The Court notes that there is support in Louisiana jurisprudence for petitioner's

contention that theft is a responsive verdict for purse snatching.  <u>State v. Marts</u>, 765 So.2d 438, 444-

45 (La. App. 4th Cir. 2000).  However, even if the trial court erred by failing to include theft as a

responsive verdict and instructing the jury in that regard, petitioner cannot be granted relief in this

forum based on that error.  As previously noted, federal *habeas corpus* relief may be granted only

to remedy violations of the Constitution and laws of the United States; mere violations of state law

will not suffice.  28 U.S.C. § 2254; <u>Engle v. Issac</u>, 456 U.S. 107, 119 (1983).  The failure to include

a responsive verdict in a noncapital case does not violate federal law.  <u>Valles v. Lynaugh</u>, 835 F.2d

126, 127 (5th Cir. 1988); <u>Alexander v. McCotter</u>, 775 F.2d 595, 601 (5th Cir. 1985); <u>Fulcher v. Greer</u>,

No. 4:03CV211-WHB-JCS, 2006 WL 1547343, at *5 (S.D. Miss. June 2, 2006).

---

[34]  State Rec., Vol. I of V, Judgment dated May 29, 2002.  The Louisiana Fourth Circuit found "no error in the trial court's judgment."  <u>State v. Jason</u>, No. 2002-K-1289 (La. App. 4th Cir. Aug. 2, 2002) (unpublished); State Rec., Vol. IV of V.  The Louisiana Supreme Court then denied the related writ applications without assigning reasons.  <u>State *ex rel.* Jason v. State</u>, 855 So.2d 297 (La. 2003) (No. 2002-KH-2414); <u>State *ex rel.* Jason v. State</u>, 855 So.2d 298 (La. 2003) (No. 2002-KH-2433); State Rec., Vol. V of V.

<u>Ineffective Assistance of Counsel</u>

Petitioner contends that his trial counsel was ineffective.   In <u>Strickland v.</u> <u>Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See id</u>. at 697.  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  <u>Id</u>.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron</u> <u>v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."   <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  In this context, a reasonable

probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a

determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d

at 793.

      A claim of ineffective assistance of counsel is a mixed question of law and fact.

Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state

court on such claims unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States."  28 U.S.C. § 2254(d)(1).

      Petitioner argues that his trial counsel was ineffective in numerous respects.  The

Court will address each of petitioner's allegations.

      Petitioner's first claim, which was asserted on direct appeal, is that his counsel was

ineffective in failing to move for a mistrial when the prosecutor referred to other crimes during

rebuttal argument.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that

claim, holding:

> Mr. Jason argues that his counsel was ineffective at trial.
> Generally, the issue of ineffective assistance of counsel is a
> matter more properly addressed in an application for post-conviction
> relief, filed in the trial court where a full evidentiary hearing can be
> conducted.  State v. Scales, 93-2003, p. 16 (La. 5/22/95), 655 So.2d
> 1326, 1337, cert. denied, Scales v. Louisiana, 516 U.S. 1050, 116
> S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Johnson, 622 So.2d 845
> (La.App. 4 Cir. 1993).  Only if the record discloses sufficient
> evidence to rule on the merits of the claim do the interests of judicial
> economy justify consideration of the issues on appeal.  State v. Peart,
> 621 So.2d 780 (La. 1993); State v. Johnson, supra.
> Mr. Jason's claim of ineffective assistance of counsel is to be
> assessed by the two-part test of Strickland v. Washington, 466 U.S.

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La. 1984). Mr. Jason must show that his counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, *supra* at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced Mr. Jason if he can show that the errors were so serious as to deprive him of a fair trial. To carry his burden, Mr. Jason "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, *supra* at 693, 104 S.Ct. at 2068. Mr. Jason must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir. 1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy," it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).

Here, Mr. Jason argues that his counsel was ineffective for failing to move for a mistrial when the prosecutor referred to other crimes during rebuttal argument. [FN2] Specifically, the prosecutor said: "Defense counsel talked about why didn't we bring the deputy, well, the deputy was not related in this particular case. He was related to the case involving a battery. It had nothing to do with this case, so why would I bring in somebody who was totally unrelated to this case to come testify. He can't tell you what the defendant did as far as the purse snatching. He knows nothings [sic] about this case." Mr. Jason's counsel objected. [FN3] The trial court overruled the objection.

> [FN2] La.Code Crim. Proc. Art. 770(2) provides: Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within hearing of the jury by the judge, district attorney, or

> a court official, during the trial or in argument, refers directly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
>
> [FN3] The basis of the objection was not necessarily that the prosecutor made an improper reference to other crimes. Defense counsel objected, stating as grounds for the objection: "It has to be with actual contest and nature of that officer's participation in this case as detailed in this transcript."
>
> Mr. Jason's defense was that he was running away from a fist fight when he "ran into" the victim. He called Officer Troy Williams in an apparent effort to present this defense. The prosecutor's comment was proper to rebut the evidence presented. La.Code Crim. Proc. art. 774.[35]

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claim that his counsel was ineffective in failing to move for a mistrial based on the prosecutor's comments.

Petitioner's remaining ineffective assistance of counsel claims were asserted in his state post-conviction application. The state district court denied those claims, holding that the claims were "not supported by a review of the record in this matter. The record reflects that petitioner's counsel exercised due diligence at all stages of the proceeding."[36] For the following

---

[35] State v. Jason, 779 So.2d at 870-71; State Rec., Vol. I of V.

[36] State Rec., Vol. I of V, Judgment dated May 29, 2002. The Louisiana Fourth Circuit found "no error in the trial court's judgment." State v. Jason, No. 2002-K-1289 (La. App. 4ᵗʰ Cir. Aug. 2, 2002) (unpublished); State Rec., Vol. IV of V. The Louisiana Supreme Court then denied the related writ applications without assigning reasons. State ex rel. Jason v. State, 855 So.2d 297 (La.

reasons, this Court likewise finds that petitioner's claims have no merit and that relief should be denied.

Petitioner claims that his counsel was ineffective in failing to interview or subpoena Edward Jordan, an eyewitness listed in the police report.   A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed.  Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998). Additionally, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'"  Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

Petitioner furnished neither the state court nor this Court any evidence in support of his bald assertions regarding the failure to interview or subpoena Jordan.  Petitioner has not provided an affidavit from Jordan or any other corroboration that he had any exculpatory information or that he would have testified in a manner consistent with petitioner's version of the facts or, for that matter, that he would have testified at trial at all.  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to interview and subpoena Jordan.

---

2003) (No. 2002-KH-2414); State ex rel. Jason v. State, 855 So.2d 298 (La. 2003) (No. 2002-KH-2433); State Rec., Vol. V of V.

Petitioner claims that his counsel was ineffective in not to objecting to the trial court's failure to include "theft" as a responsive verdict and in not requesting a jury instruction on the statutory definition of theft.  As noted previously in this opinion, there is support in Louisiana jurisprudence for petitioner's contention that theft is a responsive verdict for purse snatching.  State v. Marts, 765 So.2d 438, 444-45 (La. App. 4th Cir. 2000).  Nevertheless, that does not necessarily mean that counsel was ineffective in failing to ensure that theft was included as a responsive verdict in the instant case.

Rather, it has been noted:

> A decision to forgo a charge on lesser included offenses is strategic in nature.  Strategic choices made after reasonable investigation will seldom if ever be found wanting, because we are reluctant to second-guess matters of trial strategy simply because the chosen strategy has failed.

Lake v. Portuondo, 14 Fed. App'x 126, 128 (2nd Cir. 2001) (internal citations and quotation marks omitted); see also United States ex rel. Webster v. DeTella, 965 F. Supp. 1124, 1132-33 (N.D. Ill. 1997) ("As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged. ... That [counsel's] strategy misfired is no proof of ineffectiveness; even the best trial attorney may misjudge trial strategy on occasion.").  For example, such a strategy may validly be employed if defense counsel feels that he can establish reasonable doubt with respect to the charged offense:

> Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt.  Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989).  Additionally, counsel's failure to push for inclusion of a responsive verdict may result from an equally valid strategic choice to avoid a possible compromise verdict, opting instead to try to obtain a hung jury or an outright acquittal.  In light of the foregoing considerations, the Court finds that petitioner has failed to demonstrate that his counsel performed deficiently in not objecting to the trial court's failure to include "theft" as a responsive verdict and in not requesting a jury instruction on the statutory definition of theft.

Moreover, even if counsel's performance were found to be deficient in that respect, the Court additionally finds that petitioner has not established prejudice.  Under Louisiana law, "[t]heft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to this misappropriation or taking, or by means of fraudulent conduct, practices, or representations."  La.Rev.Stat.Ann. § 14:67.  On the other hand, "[p]urse snatching is the theft of anything of value within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon."  La.Rev.Stat.Ann. § 14:65.1.  Under the facts of the instant case, the eyewitness accounts leave no doubt whatsoever that the crime here was attempted through the "use of force, intimidation, or by snatching."  Therefore, there is no reasonable probability that the outcome would have changed in this case even if the theft instruction had been given.  Accordingly, he has demonstrated no prejudice resulting from the trial court's failure to include "theft" as a responsive verdict.  See Kubat v. Thieret, 867 F.2d 351, 365 (7th Cir. 1989); Washington v. United States, 291 F.Supp.2d 418, 442 (W.D. Va. 2003).

Petitioner next claims that his counsel was ineffective in failing to object to the multiple bill of information on the basis that the 1989 predicate conviction was invalid because

petitioner was not placed under oath prior to pleading guilty in that proceeding.  However, as previously noted in this opinion, petitioner has presented no evidence to this Court in support of his bald assertion that he was not placed under oath in the prior proceedings.  Moreover, he has not established that Louisiana law requires that the plea be taken under oath, especially in that La.C.Cr.P. art. 556.1 mentions no such requirement.  Lastly, even if such an oath is normally required, failure to administer the oath does not render the prior conviction invalid because the defect was waived if not raised by a timely objection in the prior proceedings.  State v. Henry, 788 So.2d 535, 544 (La. App. 1st Cir. 2001).  Accordingly, petitioner has not meet his burden of proof to demonstrate that counsel performed deficiently in failing to challenge the validity of the 1989 conviction on that basis or that any prejudice resulted.

Petitioner also claims that his counsel was ineffective in accepting Burmaster as an expert in fingerprint analysis.  This claim is entirely devoid of merit.  A quick survey of Louisiana jurisprudence reveals that Burmaster has repeatedly been recognized as a fingerprint expert in state criminal proceedings.  See, e.g., State v. Williams, 788 So.2d 515, 530 (La. App. 4th Cir. 2001); State v. Jones, 773 So.2d 234, 240 (La. App. 4th Cir. 2000); State v. Hayden, 767 So.2d 732, 744 (La. App. 4th Cir. 2000); State v. Drenning, 767 So.2d 45, 47 (La. App. 4th Cir. 2000).  Petitioner has offered no evidence to show that Burmaster is not in fact a qualified expert and that counsel performed deficiently in stipulating to his expertise.[37]  Moreover, in any event, as previously noted,

---

[37]   The Court notes that when a stipulation is a concession of facts which the state could have easily established at trial and no advantage would have inured to petitioner had counsel refused to enter the stipulation, a petitioner does not show the necessary prejudice to support an ineffective assistance of counsel claim regarding the stipulation.  See Berry v. King, 765 F.2d 451, 454-55 (5th Cir. 1985).

petitioner does not even now dispute that the predicate convictions in fact relate to him.  Because identity was never a true issue in the case, petitioner certainly cannot demonstrate either deficient performance or prejudice regarding the stipulation to Burmaster's expertise.

Lastly, petitioner claims that his counsel was ineffective in failing review the habitual offender arraignment transcript.  If the transcript had been reviewed, petitioner argues, then counsel would have discovered that petitioner was not advised of his right to remain silent at the arraignment.   However, as noted previously, a petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed.   Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).  Petitioner has provided no evidence whatsoever that he was not in fact advised of that right at the arraignment.  Moreover, a criminal defendant needs to be advised of his right to remain silent prior only to his acknowledgment of his guilt.  See, e.g., State v. Walker, 735 So.2d 837, 839-40 (La. App. 4th Cir. 1990).  Even if trial counsel had discovered that there was no such advisement at the arraignment and raised the issue, the trial judge could simply have cured the defect at that point prior to the hearing on the multiple bill of information.  Further, in any event, petitioner made no adverse admissions in the habitual offender proceedings.  His habitual offender status was established based on the state's evidence, not admissions by petitioner.  Therefore, as noted previously in this opinion, any failure with respect to the advisement is of no consequence.  Accordingly, for all of these reasons, petitioner cannot establish that counsel performed deficiently or that prejudice resulted.

Accordingly, petitioner has failed to demonstrate that the state court's decision rejecting his post-conviction ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States.  Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Alonzo Jason be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fifth day of July, 2006.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**